JUDGE COTE

**10 CV 6028**

WILENTZ, GOLDMAN & SPITZER, P.A.
Willard C. Shih, Esq.
90 Woodbridge Center Drive
Suite 900
Woodbridge, NJ 07095
(732) 636-8000
Attorneys for Plaintiff

RECEIVED
AUG 11 2010
U.S.D.C. S.D.N.Y.
CASHIERS

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------X
                          :

JAMAR NESBIT,               :

           Plaintiff,      :      Case No.

                          :

v.                      :

                          :        **COMPLAINT**

NATIONAL FOOTBALL LEAGUE,  :     **AND JURY DEMAND**
JOHN LOMBARDO, M.D., and  :
ADOLPHO BIRCH,        :

                          :

          Defendants.     :

                          :

------------------------------X

    Plaintiff Jamar Nesbit, by way of his Complaint against

defendants National Football League, John Lombard, M.D. and

Adolpho Birch, says:

### THE PARTIES

    1.   Plaintiff Jamar Nesbit ("Mr. Nesbit") is a

professional football player currently residing in Louisiana.

    2.   Upon information and belief, Defendant National

Football League (the "NFL") is an unincorporated association of

NFL member clubs with a place of business in New York, New

#3288900

York.

3.     Upon information and belief, Defendant John A. Lombardo, M.D. ("Lombardo") is a medical doctor employed by the NFL whose duties require him to attend hearings and/or meetings in the NFL's office in New York City.

4.     Upon information and belief, Defendant Adolpho Birch ("Birch") is the NFL's Vice President of Law and Labor Policy with an office in New York City.

5.     Collectively, the NFL, Lombardo and Birch are "Defendants".

### JURISDICTION AND VENUE

6.     This Court can exercise diversity subject matter jurisdiction over Defendants pursuant to 28 U.S.C. §1332 because: (1) Mr. Nesbit is a resident of Louisiana and Defendants are not, but conduct business within New York; and (2) the matter in controversy exceeds the sum of $75,000.

7.     This Court has personal jurisdiction over Defendants because they do business in New York.

8.     Venue for this action properly lies in this district pursuant to 28 U.S.C. §1391(b) because Defendants are doing and transacting business within this judicial district.

## BACKGROUND

**A.    The NFL's Policy and Procedure For Anabolic Steroids and Related Substances**

9.    The National Football League Players Association ("NFLPA") and the NFL collectively bargained for the NFL Policies and Procedures for Anabolic Steroids and Related Substances (the "Policy").

10.    Pursuant to the Policy, NFL players are required to submit to random tests periodically to be tested for substances banned by the Policy.

11.    One of the banned substances is Bumetanide, a prescription strength diuretic. Bumetanide is <u>not</u> a steroid or a performance enhancing drug.

12.    The Policy was intended to be applied uniformly and holds NFL players strictly liable for substances detected within their bodies. According to the Policy, a player will not be excused from liability even in those instances where he ingests a prohibited substance without his knowledge.

13.    In the event that a player violates the Policy, that player is subject to suspension from the NFL. For instance, a first time violator of the Policy shall be subject to a minimum four (4) game suspension.

14.    The administration of the Policy was entrusted to Lombardo, who was selected jointly by the NFL and the NFLPA for

this role.  Upon information and belief, it is within Lombardo's discretion to determine the method in which the player testing is administered, which players are to be tested and the manner in which such testing is to be analyzed.

**B.   Defendants' Knowledge That StarCaps Contained The Banned Substance Bumetanide And Its Failure To Warn All NFL Players**

    **i.   Test Results Commissioned By Defendants Reveal That StarCaps Contained The Undisclosed Ingredient Of Bumetanide**

15.   Beginning in or around 2006, the NFL and Lombardo knew that a dietary supplement called StarCaps contained the undisclosed ingredient Bumetanide.

16.   StarCaps, which was marketed and promoted by Balanced Health Products, Inc. ("Balanced Health"), was described as an "ALL NATURAL DIET SUPPLEMENT," that was "safe and effective."

17.   Based on the advertising and the ingredients label on the StarCaps product, StarCaps is <u>not</u> a banned product under the Policy.

18.   Bumetanide, a prescription diuretic that is banned pursuant to the Policy, is not disclosed as an ingredient of StarCaps.

19.   Upon information and belief, beginning in or around 2006, several NFL players tested positive for Bumetanide after taking StarCaps.

-4-

20. The NFL tested some but not all lots of StarCaps in an apparent effort to prove that the StarCaps product did not contain Bumetanide.

21. The results of the tests commissioned by the NFL, however, proved that the StarCaps product contained the undisclosed ingredient Bumetanide.

22. Lombardo and Birch were specifically advised of these test results.

23. As a result of these findings, Defendants secretly modified the Policy in order not to suspend those players that had tested positive for Bumetanide, instead simply requiring such players to submit to additional "reasonable cause" testing under the Policy.

24. Despite having affirmative information that NFL players were using StarCaps, and that StarCaps contained the undisclosed banned substance Bumetanide, Defendants did not advise any other players, including Mr. Nesbit, either that certain players tested positive for Bumetanide as a result of having ingested StarCaps or that it modified its strict liability standard for violation of the Policy for those certain players.

25. Furthermore, based upon the findings of the Defendants' test results, Defendants recognized the dire implications and ramifications to NFL players that existed in

-5-

allowing a contaminated dietary supplement and/or a dietary supplement with its ingredients misrepresented to persist in the marketplace.

26.   Indeed, not only did Lombardo and Birch agree that the United States Food & Drug Administration ("FDA") should be notified that StarCaps contained the undisclosed ingredient of Bumetanide, but Birch affirmatively agreed to undertake the responsibility to notify the FDA of the NFL's findings.

27.   Ultimately, neither Lombardo nor Birch, nor anyone affiliated with the NFL for that matter, presented information to the FDA advising of StarCaps' contamination with the undisclosed ingredient of Bumetanide.

ii.   **The NFL's Failure To Inform The NFLPA That StarCaps Contained Bumetanide**

28.   In addition to failing to advise the FDA of its alarming findings, the NFL did not inform the NFLPA, or any of the individual players of the NFL, including Mr. Nesbit, that StarCaps contained the undisclosed banned substance Bumetanide.

29.   Rather, the NFL by and through Birch simply advised the NFLPA and its players that the players were prohibited from endorsing any products manufactured and/or distributed by Balanced Health, which prohibition would include StarCaps, but did not explain the basis for the prohibition.

-6-

30.   In addition, rather than provide each NFL team with accurate information concerning the test results of StarCaps commissioned by the NFL, the NFL by and through Birch and Lombardo simply advised each NFL team's president, general manager and head athletic trainer that players were prohibited from endorsing StarCaps.

31.   The Defendants never advised Plaintiff that StarCaps contained an undisclosed, banned ingredient.

32.   In contrast, on several prior occasions in which the NFL learned that otherwise legal products contained undisclosed ingredients banned by the Policy, the NFL affirmatively and actively disseminated such information to the players by, among other methods, posting notices in locker rooms.

33.   No similar notices were disseminated or posted by Defendants concerning StarCaps.

34.   Therefore, while the NFL knew that StarCaps contained the undisclosed banned substance of Bumetanide, Defendants failed to advise players not to take StarCaps.

C.   **Following The NFL's Knowledge That StarCaps Contained The Undisclosed Ingredient Bumetanide, Mr. Nesbit Ingested StarCaps**

35.   Defendants did, however, adopt an undisclosed practice or procedure that any NFL player who tested positive for Bumetanide after taking StarCaps would not be subject to the otherwise automatic four (4) game minimum suspension.

-7-

36.   In fact, Defendants followed this undisclosed practice or procedure for the StarCaps product in several cases.

37.   Upon information and belief, no less than eight (8) NFL players who testified positive for Bumetanide after taking StarCaps were not suspended at all.

38.   Mr. Nesbit played consecutively in the NFL from 1999 through the 2009-2010 season with the Carolina Panthers, then the Jacksonville Jaguars and then the New Orleans Saints.  At the present time, Mr. Nesbit is an unrestricted free agent. Mr. Nesbit previously held a starting offensive lineman position for the New Orleans Saints -- until his suspension as described below.

39.   On and before June 2008, approximately two (2) years after the NFL's findings regarding StarCaps as described herein, Mr. Nesbit purchased the StarCaps product and innocently used it in accordance with its label instructions.

40.   As was customary, the ingredients panel on the StarCaps label purported to list the active ingredients in StarCaps.

41.   Mr. Nesbit read the ingredients panel which identified only "natural" ingredients, none of which were prohibited for use by an NFL player.

-8-

42. Bumetanide was not listed in the ingredients panel on any StarCaps purchased and ingested by Mr. Nesbit.

43. Had Mr. Nesbit been advised by Defendants of the findings of the test results commissioned by the NFL, namely, that StarCaps contained the undisclosed ingredient Bumetanide, a banned substance under the Policy, Mr. Nesbit never would have purchased, let alone taken, StarCaps.

44. Thus, Defendants failure to advise was a material factor in Mr. Nesbit's decision to use the StarCaps product.

45. On July 25, 2008, and after Mr. Nesbit had purchased and used the StarCaps product, Mr. Nesbit was requested to provide a urine specimen pursuant to the Policy.

46. Mr. Nesbit was taking the StarCaps product prior to the random test on July 25, 2008.

47. On August 28, 2008, Mr. Nesbit was advised by letter from the NFL that his urine specimen taken on July 25, 2008 had tested positive for Bumetanide. He was informed that the "B" sample from the same urine specimen would be tested to confirm the result.

48. Subsequently, Mr. Nesbit was advised that the "B" sample also tested positive for Bumetanide.

49. Throughout Mr. Nesbit's years in the NFL, as part of the Policy, he had been subject to a number of random drug

-9-

tests, which he willingly complied with.  Prior to the test on

July 25, 2008, all test results were negative.

50.  Despite several high profile instances of players

testing positive for substances banned under the Policy, Mr.

Nesbit took great pride in steering clear of being associated

with such use, and had never previously been alleged to have

taken any prohibited substances.

51.  Mr. Nesbit retained the StarCaps product that he had

purchased prior to the July 25, 2008 positive test and arranged

to have the StarCaps product tested by a highly qualified

independent laboratory.  In total, five (5) separate bottles of

StarCaps were sent for testing.

52.  Similar to the undisclosed test results commissioned

by the NFL, the laboratory results for each bottle provided by

Mr. Nesbit revealed that the StarCaps capsules contained the

undisclosed ingredient Bumetanide in sufficient amounts to

cause a positive test result by a professional athlete.

53.  Despite the fact that the NFL knew that StarCaps

contained Bumetanide and that several players who tested

positive after taking StarCaps were not suspended, Mr. Nesbit

received notice of a four (4) game suspension during the 2008

season.

54.  At this time, given Defendants concealment of the

modification of the Policy for those players that also

-10-

innocently ingested StarCaps so as to permit them to avoid suspension, Mr. Nesbit accepted his suspension without appeal.

55. Had Mr. Nesbit been made aware that the Policy had been previously modified, Mr. Nesbit would have appealed his suspension under the same modification previously enacted.

56. Defendants' concealment of the undisclosed practice or procedure <u>not</u> to suspend players who tested positive for Bumetanide after taking the StarCaps product was a material factor in Mr. Nesbit's decision to accept his suspension and forego his opportunity to appeal such suspension.

57. Ultimately, Mr. Nesbit's four game suspension not only resulted in a loss of income for those four games plus a reduction in a deferred signing bonus, but has also negatively impacted Mr. Nesbit's reputation in his profession, as well as his marketability as a professional athlete in the NFL and his earning potential in the league.

58. In December 2008, in spite of Defendants' failure to warn, and based on steps directly related to Mr. Nesbit, the FDA issued an immediate recall of the StarCaps product because independent tests confirmed that the product was found to contain the undisclosed drug ingredient of Bumetanide.

D. **Defendants' Knowledge Of Bumetanide In The StarCaps Product And Disparate And Arbitrary Treatment Of NFL Players Revealed In The Matter Of Williams, et al. Versus Defendants**

59. A lawsuit was previously filed against Defendants by NFL players Kevin and Pat Williams in the State of Minnesota, County of Hennepin, District Court, Fourth Judicial District, Court File No. 27-CV-08-29778 (the "Williams' Litigation") regarding Defendants' implementation of the Policy.

60. In February 2010, it was judicially determined in the Williams' Litigation for the first time that Defendants: (1) were aware, through their own independent testing, that StarCaps was distributed without disclosing that Bumetanide was an active ingredient, a banned substance under the Policy; (2) modified the Policy so as to enable certain NFL players that previously ingested StarCaps and tested positive under the Policy for the banned substance Bumetanide to avoid suspension; (3) withheld information from the NFLPA and its players, including Mr. Nesbit, that would have alerted them to the fact that StarCaps was distributed without disclosing that Bumetanide was an active ingredient; and (4) withheld information from the NFLPA and its players, including Mr. Nesbit, that would have alerted them to the fact that Defendants modified the Policy so as to enable players that ingested StarCaps and tested positive under the Policy for the banned substance Bumetanide to avoid suspension.

## FIRST COUNT

### (ARBITRARY AND CAPRICIOUS CONDUCT)

61. Mr. Nesbit repeats and realleges the allegations contained in the prior counts as if more fully set forth at length herein.

62. As alleged above, the NFL was aware that the StarCaps product contained the undisclosed ingredient Bumetanide, a substance banned by the Policy.

63. After initially learning this information through their own independent testing, Defendants modified the requirement of strict liability for violations under the Policy so as to enable players who tested positive for Bumetanide as a result of ingesting StarCaps to avoid an automatic suspension.

64. Defendants, however, did not disclose the above referenced fact, or that they possessed knowledge of the fact that the StarCaps product contained the undisclosed banned substance Bumetanide, at any point prior to the time in which Mr. Nesbit tested positive for Bumetanide under the Policy.

65. While Mr. Nesbit tested positive as a result of ingesting StarCaps, Defendants treated Mr. Nesbit in an arbitrary, capricious and unreasonable manner so as to deny Mr. Nesbit the same process accorded to at least eight (8) other NFL players similarly situated.

66. Defendants' treatment of Mr. Nesbit under the Policy as compared to other similarly situated players was arbitrary, capricious and unreasonable.

67. As a proximate cause and legal result of Defendants' arbitrary, capricious and unreasonable conduct, Mr. Nesbit has been damaged.

WHEREFORE, Mr. Nesbit demands the entry of judgment in his favor and against Defendants as follows:

> (a) Awarding compensatory, consequential, incidental and punitive damages, including prejudgment interest thereon;
>
> (b) Awarding Mr. Nesbit his reasonable attorneys' fees and costs of suit;
>
> (c) Awarding such further relief as the Court deems equitable and just.

### SECOND COUNT

### (DISPARATE TREATMENT)

68. Mr. Nesbit repeats and realleges the allegations contained in the prior counts as if more fully set forth at length herein.

69. As alleged above, the NFL was aware that the StarCaps product contained the undisclosed ingredient Bumetanide, a substance banned by the Policy.

70.  After initially learning this information through their own independent testing, Defendants modified the requirement of strict liability for violations under the Policy so as to enable certain players that tested positive for Bumetanide as a result of ingesting StarCaps to avoid an automatic suspension.

71.  Defendants, however, did not disclose the above referenced fact, or that they possessed knowledge of the fact that the StarCaps product contained the undisclosed banned substance Bumetanide, at any point prior to the time in which Mr. Nesbit tested positive for Bumetanide under the Policy.

72.  While Mr. Nesbit tested positive as a result of ingesting StarCaps, Defendants treated Mr. Nesbit in an arbitrary, capricious and unreasonable manner so as to deny Mr. Nesbit the same process accorded to other NFL players similarly situated.

73.  Defendants' disparate treatment of Mr. Nesbit under the Policy as compared to other similarly situated players was improper and actionable.

74.  As a proximate cause and legal result of Defendants' improper and impermissible disparate treatment of Mr. Nesbit under the Policy, Mr. Nesbit has been damaged.

WHEREFORE, Mr. Nesbit demands the entry of judgment in his favor and against Defendants as follows:

-15-

(a)   Awarding compensatory, consequential, incidental and punitive damages, including prejudgment interest thereon;

(b)   Awarding Mr. Nesbit his reasonable attorneys' fees and costs of suit;

(c)   Awarding such further relief as the Court deems equitable and just.

### THIRD COUNT

### (FRAUD)

75.   Mr. Nesbit repeats and realleges the allegations contained in the prior counts as if more fully set forth at length herein.

76.   The ingredients panel on the StarCaps product purports to list the ingredients but fails to disclose the presence of Bumetanide.

77.   Defendants made a number of material misrepresentations and/or omissions of presently existing facts by failing to advise the NFL players, including Mr. Nesbit, that the StarCaps product contained the undisclosed ingredient of Bumetanide, a substance banned by the Policy, despite having affirmative knowledge that StarCaps did in fact contain Bumetanide.

78.   In addition, Defendants made a number of material misrepresentations and/or omissions of presently existing facts

-16-

by failing to advise Mr. Nesbit that Defendants modified the
Policy so as to enable certain players to avoid suspension
despite having ingested StarCaps under the identical
circumstances as Mr. Nesbit.

79.   Defendants had a duty to completely and accurately
advise the NFL players, including Mr. Nesbit, of the
aforementioned.

80.   At the time Defendants made representations
concerning StarCaps and/or Defendants' implementation and
modification of the Policy to accommodate those certain players
who ingested StarCaps and tested positive for Bumetanide, they
were aware of the falsity of those representations, and/or the
necessity to include additional information that was omitted
that would have rendered such representations complete and
accurate.

81.   At the time Defendants made these misrepresentations
or omissions, they intended that others, such as Mr. Nesbit,
would rely upon them.

82.   Mr. Nesbit relied upon Defendants' misrepresentations
or omissions at the time he purchased and subsequently used
StarCaps.

83.   In addition, Mr. Nesbit relied upon Defendants'
misrepresentations or omissions upon accepting his four game

-17-

suspension from the NFL without challenge or appeal as a result of testing positive for Bumetanide due to ingesting StarCaps.

84. The actions of Defendants, as more particularly described throughout this Complaint, constitute fraud.

85. Based on the allegations herein, Defendants are guilty of fraud and, as a consequence, Mr. Nesbit is entitled to recovery of exemplary and punitive damages in an amount to be determined according to proof at the time of trial.

WHEREFORE, Mr. Nesbit demands the entry of judgment in his favor and against Defendants as follows:

> (a) Awarding compensatory, consequential, incidental and punitive damages, including prejudgment interest thereon;
>
> (b) Awarding Mr. Nesbit his reasonable attorneys' fees and costs of suit;
>
> (c) Awarding such further relief as the Court deems equitable and just.

### FOURTH COUNT

### (EQUITABLE FRAUD)

86. Mr. Nesbit repeats and realleges the allegations contained in the prior counts as if more fully set forth at length herein.

87. Defendants made a number of material misrepresentations and/or omissions of presently existing facts

-18-

by failing to advise NFL players, including Mr. Nesbit, that the StarCaps product contained the undisclosed ingredient of Bumetanide, a substance banned by the Policy, despite having affirmative knowledge that StarCaps did in fact contain Bumetanide.

88.   In addition, Defendants made a number of material misrepresentations and/or omissions of presently existing facts by failing to advise Mr. Nesbit that Defendants modified the Policy so as to enable certain players to avoid suspension despite having ingested StarCaps under the identical circumstances as Mr. Nesbit.

89.   At the time Defendants made representations concerning StarCaps and/or Defendants' implementation and modification of the Policy to accommodate those certain players that ingested StarCaps and tested positive for Bumetanide, they knew or should have known of the falsity of those representations, and/or the necessity to include additional information that was omitted that would have rendered such representations complete and accurate.

90.   Mr. Nesbit, to his detriment, relied upon Defendants' misrepresentations or omissions at the time he purchased and subsequently used StarCaps.

91.   In addition, Mr. Nesbit, to his detriment, relied upon Defendants' misrepresentations or omissions upon accepting

his four game suspension from the NFL without challenge or appeal as a result of testing positive for Bumetanide due to ingesting StarCaps.

92.   The actions of Defendants, as more particularly described throughout this Complaint, constitute an equitable fraud.

93.   As a proximate cause and legal result of the Defendants' equitable fraud, Mr. Nesbit has been damaged and is entitled to any and all equitable relief.

WHEREFORE, Mr. Nesbit demands the entry of judgment in his favor and against Defendants as follows:

> (a)   Awarding compensatory, consequential, incidental and punitive damages, including prejudgment interest thereon;
>
> (b)   Awarding Mr. Nesbit his reasonable attorneys' fees and costs of suit;
>
> (c)   Awarding such further relief as the Court deems equitable and just.

**FIFTH COUNT**

**(NEGLIGENCE)**

94.   Mr. Nesbit repeats and realleges the allegations contained in the prior paragraphs as if more fully set forth at length herein.

95. Pursuant to the Policy, the NFL determined that Bumetanide was a banned substance the taking of which the NFL recognized would cause materially adverse health consequences.

96. In administering the Policy, Defendants became aware that StarCaps contained the undisclosed ingredient Bumetanide, a banned substance under the Policy, and that StarCaps failed to warn consumers of the existence of the undisclosed presence of Bumetanide in it.

97. Upon information and belief, despite Defendants' prior notice that Bumetanide was an undisclosed ingredient in the StarCaps product, Defendants failed to affirmatively disclose this information to NFL players, including Mr. Nesbit, or teams.

98. As such, Defendants expressly and impliedly warranted StarCaps as a safe dietary supplement. Defendants made the aforementioned express or implied representations despite the fact that the product contained the undisclosed ingredient Bumetanide as detailed above.

99. Mr. Nesbit, in purchasing and using the StarCaps product, relied on Defendants' representations or omissions to his detriment, resulting in damages as herein above alleged.

100. Mr. Nesbit has been compromised in his ability to receive his 2008 contract compensation, and to continue with his

NFL career and to be paid commensurate with his experience and talents.

101. As a proximate cause and legal result of the defective condition of StarCaps as manufactured, marketed and sold by Balanced Health, which defects Defendants were aware of prior to Mr. Nesbit's ingestion of the StarCaps product, and as a direct and legal result of the negligence, carelessness, other wrongdoing and actions of Defendants herein, including, but not limited to, Defendants' failure to warn the NFL players of the dangers posed by taking StarCaps, Mr. Nesbit has sustained economic losses.

WHEREFORE, Mr. Nesbit demands the entry of judgment in his favor and against Defendants as follows:

> (a) Awarding compensatory, consequential and incidental damages, including prejudgment interest thereon;

> (b) Awarding Mr. Nesbit his reasonable attorneys' fees and costs of suit;

> (c) Awarding such further relief as the Court deems equitable and just.

## SIXTH COUNT

### (NEGLIGENT MISREPRESENTATION)

102. Mr. Nesbit repeats and realleges the allegations contained in the prior counts as if more fully set forth at length herein.

103. Defendants knew that the StarCaps product contained the undisclosed substance Bumetanide.

104. Defendants further knew that the Policy was previously modified so as to enable certain players that ingested StarCaps to avoid suspension as a result of positive drug tests for Bumetanide.

105. Defendants negligently misrepresented and/or omitted information pertaining to StarCaps by, among other things, simply advising the NFL players, including Mr. Nesbit, not to endorse StarCaps instead of advising its players that StarCaps contained an undisclosed ingredient banned by the Policy.

106. Mr. Nesbit consumed the StarCaps product without knowing that it contained the undisclosed ingredient Bumetanide, which is a banned substance under the Policy.

107. Furthermore, upon testing positive for Bumetanide, Mr. Nesbit unknowingly accepted his four game suspension from the NFL without challenge or appeal despite Defendants having already modified the Policy so as to enable players in his situation to avoid suspension.

-23-

108. As a proximate cause and legal result of the negligence misrepresentations of Defendants, as detailed above, Mr. Nesbit has been damaged.

WHEREFORE, Mr. Nesbit demands the entry of judgment in his favor and against Defendants as follows:

(a) Awarding compensatory, consequential, incidental and punitive damages, including prejudgment interest thereon;

(b) Awarding Mr. Nesbit his reasonable attorneys' fees and costs of suit;

(c) Awarding such further relief as the Court deems equitable and just.

### DEMAND FOR JURY TRIAL

Mr. Nesbit hereby demands a trial by jury on all issues so triable in this action.

WILENTZ, GOLDMAN & SPITZER, P.A.
Attorneys for Plaintiff

By _____
WILLARD C. SHIH and
BRIAN J. MOLLOY, *Pro Hac Vice*
Application Pending
90 Woodbridge Center Drive
Suite 900
Woodbridge, NJ  07095
Direct Dial: (732) 855-6016
Direct Fax:  (732) 726-6682
E-mail: wshih@wilentz.com

DATED: August 10 , 2010

-24-